**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | : | |
| MARIO OCHOA CASTRO, | | |
| | : | Civil No. 10-5199 (RBK) |
| Plaintiff, | | |
| | : | |
| v. | | |
| | : | |
| UNITED STATES OF AMERICA et al., | : | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | : | |
| | : | |

IT APPEARING THAT:

1.      On October 8, 2010, the Clerk received Plaintiff's civil complaint ("Complaint").  See

Docket Entry No. 1.  The Complaint arrived unaccompanied by either Plaintiff's in forma

pauperis ("IFP") application or by prepayment of his filing fee.  See id.  The Clerk, upon

receipt of the Complaint, initiated the instant matter designating "Cause" as "42 [U.S.C.

§] 1983" in light of Plaintiff's: (a) being a federal inmate; and (b) raising challenges to

medical care he was provided during his incarceration.[1]  See generally, Docket.

_____

[1]  Since Plaintiff is a federal inmate and challenging the medical care provided to him
during his federal incarceration, Plaintiff's claims, technically, could not qualify as § 1983
challenges.  Rather, they could be qualified as challenges raised under Bivens v. Six Unknown
Federal Narcotics Agents, 403 U.S. 388 (1971).  However – since the choice of "causes" allowed
to the Clerk is limited by the Administrative Office of the Courts and envisions no "Bivens"
option – the Clerk's designation was correct because Bivens is the federal counterpart of § 1983
(which applies only to state action).  See Brown v. Philip Morris, Inc., 250 F.3d 789, 801 (3d Cir.
2001) ("A Bivens action . . . is the federal equivalent of the § 1983 cause of action against state
actors, [it] will lie where the defendant has violated the plaintiff's rights under color of federal
law").

2.      In light of Plaintiff's failure to submit his IFP application or to prepay his filing fee, this

        Court issued an order, dated October 20, 2010 ("October Order"), directing Plaintiff to

        submit his IFP application or his filing fee.  See Docket Entry No. 2.

3.      On November 1, 2010, the Clerk received Plaintiff's IFP application.  See Docket Entry

        No. 3.

4.      In addition, also on November 1, 2010, the Clerk received a letter from Plaintiff.  See

        Docket Entry No. 4.  In that letter, Plaintiff stressed, in no ambiguous terms, his complete

        lack of interest in instituting a Bivens action and requested this Court to construe his

        complaint as raising challenges solely under the Federal Tort Claim Act.  See id.  The

        Court, therefore, examines Plaintiff's Complaint accordingly.[2]

5.      Plaintiff's Complaint encompasses the actual body of the complaint and a number of

        attachments.  See Docket Entry No. 1.  The attachments include Plaintiff's administrative

        grievances and appeals, as well as responses he received from his warden, the Regional

        Office and the Central Office.  See id. at 8-21.

6.      The body of the complaint asserts that, in June 2009, Plaintiff underwent a cataract

        surgery on one eye, and then another cataract surgery on another eye.  See id. at 2.

---

[2] While the Supreme Court guided, in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007),
that a plaintiff satisfies the pleading requirement by merely stating sufficient factual grounds for
relief, see Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008), and -- for the
purpose of distilling a pro se litigant's legal claim -- such factual heft must be construed liberally
and with a measure of tolerance, see Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998), this Court
cannot ignore Plaintiff's express statement that he is interested in litigating a certain legal claim
and not interested in litigating an alternative one.  See Caterpillar Inc. v. Williams, 482 U.S. 386,
392 (1987) (explaining that a plaintiff is "the master of [his] claim); Kline v. Sec. Guards, Inc.,
386 F.3d 246, 252 (3d Cir. 2004) (same); see also Pliler v. Ford, 542 U.S. 225, 231-32 (2004)
("District judges have no obligation to act as counsel or paralegal [even] to pro se litigants").

Plaintiff also asserts that, during the period between his second surgery and his first post-surgical evaluation (that took place on October 14, 2010), he began experiencing a "sandy sensation" in one eye. See id. at 2-3.   Plaintiff maintains that, as a result of such sensation, he developed a higher sensitivity to wind and light.[3]  See id. at 3.   From the foregoing, Plaintiff deduces that his eye surgeries were negligently performed, see id. at 4-7, and "demands judgment against the defendant [presumably, the United States,] for $5,000,000.00 dollars, plus costs."[4]  Id. at 7.

7.     The exhibits attached to the body of Plaintiff's complaint provide more detail.

    a.     In his informal resolution form (submitted either in September or in October of 2010), Plaintiff asserted that "[t]he present [i]nexcusable violation in health care ethics is the consequence of [unspecified whose] failure to follow up medical supervision of the eye catara[c]t surgery during May 2009 on both eyes."  Id. at 9. The response Plaintiff obtained as a result of his submission of that form read, "[a]ccording to Health [Care Services of FCI Fort Dix, that is, Plaintiff's place of confinement, Plaintiff was] scheduled to see the ophthalmologist on 10/13/09," that is, in a few days from the date of his filing of the form.  Id.

    b.     Appealing this response to his warden, Plaintiff asserted that, if he had began experiencing the alleged "sandy sensation," that sensation must have meant that

---

[3]  Plaintiff also alleges that the lenses of the glasses prescribed to him should be of "amber" color (to reduce the bother of a bright light), but the actual glasses provided to Plaintiff have only amber-colored frame with colorless lenses.  See Docket Entry No. 1, at 4.

[4]  Since Plaintiff is proceeding in this matter pro se, the Court is not entirely clear as to which "costs" Plaintiff has in mind, and presumes it to be the filing fee.

his surgery was performed negligently.  See id. at 10.  He concluded that appeal

with the following remedy demand, "I, cordially, as of right, ask for the

enforcement of the right to be meticulously examined by a specialized eye-doctor,

in order to get the proper treatment due to a human being . . . . Your concern in

addressing this matter [should] compl[y] with the standards of avoiding cruel and

unusual punishment, as announced in the U.S. Constitution's 8th Amendment."

Id.  Plaintiff's warden responded by acknowledging being appraised of Plaintiff's

September/October of 2009 demand for "examin[ation] by a specialized eye

doctor," but pointing out that such examination of Plaintiff by an ophthalmologist

did indeed took place on October 14, 2009, and the ophthalmologist "examined

[Plaintiff's] eyes, and recommended . . . medicated eye drops and artificial tears

[which, seemingly, were provided to Plaintiff by his correctional facility, and also]

recommended to continue with the current course of treatment."  Id. at 12.

c.      In response, Plaintiff filed appeal with the Regional Office.  See id. at 13.  In that

appeal he, again, asserted that he continued to feel the "sandy sensation," qualified

the medical help he was received as "[t]his atrocity in medical ethics" because

"the eye surgeon who performed the surgeries has not bother to come and revise

whether his surgeries were effective even though [Plaintiff] continuously ask[ed]

to be seen by him."  Id. at 14.  Plaintiff concluded his appeal with the "remedy

demand" reading: "[t]he instant situation is a violation [of] the Eighth

Amendment to the U.S. Constitution, for Cruel and Unusual Punishment, and

[Plaintiff] demands prompt attention due to medical negligence by the Medical

Staff at FCI Fort Dix." Id. (capitalization in original). The Regional Office

responded to Plaintiff's appeal by the following statement:

> In your appeal, you contend you are not receiving adequate medical
> care at FCI Fort Dix for eye pain upon exposure to light and wind.
> You allege no medical attention has been provided to you after
> your cataract surgery, which has caused vision related problems.
> You state this is a violation of your Eighth Amendments Rights
> and constitutes medical negligence. You request prompt follow-up
> from the physician who performed the cataract surgery. A review
> of your medical record reveals that you received cataract surgery
> on June 12, 2009, and had a post surgery follow- up appointment
> with you Primary Care Provider Team on June 30, 2009. As such,
> you were advised that a consultation would be generated to see the
> Optometrist, to correct refraction problems, and Ophthalmology for
> post surgery follow-up. Your Optometry encounter occurred on
> September 23, 2009, and you received an updated eyeglass
> prescription with amber lens to protect your eyes from sunlight, as
> well as post surgery follow-up with the Ophthalmologist on
> November 18, 2009. You will be scheduled for Ophthalmology
> again in six months. You have been properly prescribed all
> medications and no documentation exists in your medical record to
> suggest any complications from the surgery. Medical staff advise
> you are receiving appropriate medical treatment and continue to
> have access to sick call. Accordingly, your appeal is denied.

Id. at 15.

d.      Upon receiving that response, Plaintiff filed an appeal with the Central Office.

See id. at 16. In that appeal, Plaintiff conceded being seen by ophthalmologist

and receiving the prescribed eye care (except for amber-lensed glasses) but

continued to insist that his eye surgeries had to be performed negligently because

he never had to "cover [his] eyes from the light and wind" before surgeries, but

had to start doing so after the surgeries. See id. He concluded that appeal with

the following "demand for remedy":

> I do not know if this condition is deplorable, permanent, or curable, that burden rests on Medical Staff!  This Office should conduct a thorough investigation in the present matter, being my condition affects me throughout the day.

Id. at 17.  Plaintiff received the following response from the Central Office:

> This is in response to your Central Office Administrative Remedy in which you contend you underwent surgical correction of your eye sight, however, the surgery was unsuccessful. Specifically, you request an evaluation by a consultant eye specialist.  Relevant portions of your medical record have been reviewed which reveal you underwent cataract surgery of your right and left eyes in June, 2009.  On November 18, 2009, you were evaluated in the clinic by a consultant ophthalmologist who recommended eyeglasses and a follow-up evaluation in six months.  Should you have any questions and concerns regarding your eye sight, you are encouraged to discuss your concerns during this appointment. The record reflects you are receiving medical care and treatment in accordance with Bureau policy.

Id. at 28.

8.    Plaintiff's Complaint indicates that it is subject to dismissal for lack of jurisdiction.[5]

Generally, the United States is immune from suit unless it consents to be sued.  See

---

[5]  The Court also notes, in passing, its uncertainty as to timeliness of Plaintiff's action. Section 2401 provides that "a tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within . . . six months after the date of . . . of notice of final denial of the claim by the agency to which it was presented."  28 U.S.C. § 2401(b).  Here, the Central Office's response was dated April 7, 2010, see Docket Entry No. 1, at 18, which means that Plaintiff's time to initiate this action expired on October 6, 2010. However, his Complaint was mailed to this Court on October 7, 2010.  See id. at 22.  Yet, in light of Plaintiff's signing his complaint on October 4, this Court will presume, without making factual or legal findings to that effect, that: (a) Plaintiff actually submitted his Complaint to his prison officials for mailing on that very date, that is, October 4, 2010; and (b) Plaintiff's submission raising Federal Tort Claim Act challenges is covered by the "prisoner mailbox rule," under which a prisoner's submission is deemed filed as of the date when the prisoner hand delivers the submission to his/her prison officials for mailing to the court.  See Burns v. Morton, 134 F.3d 109, 112 (3d Cir. 1998); see also Houston v. Lack, 487 U.S. 266 (1988).  The Court, thus, will deem Plaintiff's Complaint timely for the purposes of the analysis conducted here.

United States v. Sherwood, 312 U.S. 584, 586 (1941).  The FTCA creates a limited

waiver of sovereign immunity for claims against the United States for the negligence of

its officers or employees acting within the scope of their employment.[6]  See 28 U.S.C.

§1346(b); see also Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003).  "Because

the Federal Tort Claims Act constitutes a waiver of sovereign immunity, the Act's

established procedures have been strictly construed."  Livera v. First Nat'l State Bank of

N.J., 879 F.2d 1186, 1194 (3d Cir. 1989).  Although  § 1346(b)(1) of the Federal Tort

Claim Act ("FTCA") grants federal district courts exclusive jurisdiction over civil actions

or claims against the United States, a party bringing suit under the FTCA must first

present the claim to the appropriate federal agency and receive a final denial before

proceeding in the district courts.  See 28 U.S.C. § 2675(a).  The FTCA further specifies

that an FTCA action "shall not be instituted for any sum in excess of the amount of the

claim presented to the federal agency."  28 U.S.C. § 2675(b); see also 28 C.F.R §14.2 (a

claim is deemed presented when the federal agency receives written notification of the

alleged tortious incident and injuries accompanied by the claim for money damages in a

*sum certain*).  Thus, the administrative exhaustion requirements under the FTCA are clear

and mandatory.  Moreover, because the requirements of presentation and *a demand for a*

*sum certain*[7] are among the terms defining the United States' consent to be sued, they are

---

[6]  Since it appears that Plaintiff's surgeries were performed by a surgeon employed by a
civilian hospital, it is also doubtful that the surgeon qualifies as a United States officer/employee
acting within the scope of his employment.  However, for the purposes of this Opinion only, the
Court will presume that this requirement was met.

[7]  In other words, "[t]his provision 'anticipates that the claim will be for a *definite*
*amount*.'"  White-Squire v. U.S. Postal Service, 592 F.3d 453, 457 (3d Cir. 2010) (citing Adams

jurisdictional and cannot be waived.  See White-Squire v. U.S. Postal Service, 592 F.3d

453, 457 (3d Cir. 2010) (relying, inter alia, on Bialowas v. United States, 443 F.2d 1047,

1049 (3d Cir. 1971)).

9.    Here, Plaintiff's exhibits unambiguously determine that the remedy Plaintiff sought

during his administrative process was not a "sum certain," and not even a "sum" at all.

Rather, Plaintiff demanded various (and inconsistent) forms of injunctive relief, i.e.,

"enforcement of the right to be meticulously examined by a specialized eye-doctor,"

"prompt attention due to medical negligence by the Medical Staff at FCI Fort Dix" and "a

thorough investigation in the present matter."  Docket Entry No. 1, at 10, 14 and 17.[8]  In

contrast, here, Plaintiff demands monetary relief in the amount $5,000,000 that has

nothing in common with the injunctive relief he was seeking during his administrative

process (and exceeding that injunctive relief by exactly five million dollars).  Therefore,

Plaintiff has not met the presentation and sum certain requirements mandated by the

FTCA and as such, he has failed to exhaust her administrative remedies.  See, e.g.,

McCluskey v. United States, 2010 U.S. Dist. LEXIS 108874 (W.D. Pa. Oct. 12, 2010)

(where the plaintiff demanded monetary damages under the FTCA but offered  no

evidence that she demanded a claim for money damages in a sum certain for her injuries

from an appropriate federal agency, she failed to exhaust her administrative remedies).

---

v. United States, 615 F.2d 284, 292 n.17 (5th Cir. 1980)) (emphasis supplied).

    [8] Since, here, Plaintiff states negligence claims against the *surgeon who operated* on him
on the basis of the *surgeries* performed, while Plaintiff's administrative grievances presented
claims against *FCI Fort Dix* officials based on *post-surgical care*, the Complaint has to be
deemed fully unexhausted, even if the Court were, somehow, to omit focusing on the "sum
certain" aspect.

Consequently, this Court is constrained to dismiss Plaintiff's FTCA claims for lack of subject matter jurisdiction. See id.

10.     The Court's analysis, however, would be incomplete without at least a cursory review of whether grant of leave to amend is warranted.

      a.     For the purposes of Plaintiff's FTCA claims, Plaintiff's exhibits attached to the body of his complaint clearly establish his failure to exhaust, and this deficiency cannot be cured by re-pleading. Therefore, for the purposes of Plaintiff's FTCA claims, leave to amend appears facially futile.

      b.     Had the Court examined Plaintiff's challenges under Bivens, Plaintiff's Eighth Amendment claims based on "sandy sensation" and self-servingly asserted surgical negligence would be subject to dismissal.[9] Conversely, Plaintiff's claims

---

[9]   The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. See Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). It is doubtful that a "sandy sensation" qualifies as a serious medical need. The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's

that he was denied prescribed "amber-lensed" glasses might have warranted grant

of leave to re-plead (since these allegations are sketched so patchily to deserve a

chance for clarification) had these allegations been examined for the purposes of a

Bivens analysis.  Here, however, Plaintiff expressly and in no ambiguous terms

directed the Court to exclude from its analysis any Bivens construction of

Plaintiff's claims.  See Docket Entry No. 4 (Plaintiff's letter directing the Court to

construe Plaintiff's Complaint as asserting only FTCA challenges).  In light of the

foregoing, Plaintiff's Complaint will be dismissed with prejudice.  See Caterpillar,

482 U.S. at 392 (plaintiff is "the master of [his] claim); see also Gutierrez v.

Peters, 111 F.3d 1364, 1374 (7th Cir. 1997) ("[A] plaintiff can plead himself out

of court by [making statements] which show that he has no claim, even though he

was not required to [so] allege").

IT IS, therefore, on this _____15th_____ day of ___November___, 2010,

ORDERED that the Clerk shall reopen this matter by making a new and separate entry on

the docket reading "CIVIL CASE REOPENED"; and it is further

---

subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. See Andrews v. Camden County, 95 F. Supp. 2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. See Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.  Therefore, Plaintiff's self-serving bold assertions that his surgeries were performed negligently would be subject to dismissal is examined under Bivens.

ORDERED that Plaintiff's application to proceed in forma pauperis is granted; and it is further

ORDERED that Plaintiff is assessed a filing fee of $350.00 which shall be deducted from his prison account pursuant to 28 U.S.C. § 1915(b)(2) in the manner set forth below, regardless of the outcome of the litigation; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(1)(A), Plaintiff is assessed an initial partial filing fee equal to 20% of the average monthly deposits to Plaintiff's prison account for the six month period immediately preceding the filing of the complaint; when funds exist, the agency having custody of Plaintiff shall deduct said initial fee from Plaintiff's prison account and forward it to the Clerk; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(2), until the $350.00 filing fee is paid, each subsequent month that the amount in Plaintiff's prison account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from the Plaintiff's account, and forward to the Clerk payments equal to 20% of the preceding month's income credited to Plaintiff's prison account, with each payment referencing the docket number of this action; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b), the Clerk shall forward a copy of this Order by regular mail to the United States Attorney for the District of New Jersey and the agency having custody of Plaintiff; and it is further

ORDERED that Plaintiff's Complaint, Docket Entry No. 1, is dismissed with prejudice; and it is finally

ORDERED that the Clerk shall serve this Memorandum Opinion and Order upon

Plaintiff by regular U.S. mail and close the file on this action by making a new and separate entry

on the docket reading "CIVIL CASE CLOSED."


s/Robert B. Kugler
**Robert B. Kugler**
**United States District Judge**