UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARIO OCHOA CASTRO, | : | |
| | : | Civil No. 10-5199 (RBK) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA et al., | : | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | : | |

IT APPEARING THAT:

1. On October 8, 2010, the Clerk received Plaintiff's civil complaint ("Complaint"), which arrived unaccompanied by either Plaintiff's in forma pauperis ("IFP") application or by prepayment of his filing fee. See Docket Entry No. 1. The Clerk, therefore, initiated the instant matter, designating "Cause" as "42 [U.S.C. §] 1983," because Plaintiff was an inmate, whose Complaint alleged denial of medical care. See id.

2. In light of Plaintiff's failure to submit his IFP application or to prepay his filing fee, this Court issued an order, dated October 20, 2010 ("October Order"): (a) directing Plaintiff to submit his IFP application or his filing fee; and (b) directing the Clerk to administratively terminate this matter, subject to reopening upon timely receipt of Plaintiff's IFP or filing fee. See Docket Entry No. 2. Since the Court was mindful of Plaintiff's potential concerns as to the effect the administratively termination might have on timeliness of Plaintiff's challenges, the Court's October Order included the following clause:

> ORDERED that administrative termination is not a "dismissal" for purposes of the statute of limitations, and that if this § 1983 case is reopened pursuant to the terms of this Order, it is not thereby subject to the

>statute of limitations bar, provided the original Complaint was timely. See Houston v. Lack, 487 U.S. 266 (1988); McDowell v. Delaware State Police, 88 F.3d 188, 191 (3d Cir. 1996); Williams-Guice v. Board of Education, 45 F.3d 161, 163 (7th Cir. 1995).

Docket Entry No. 2, at 3.[1]

The October Order was duly served on Plaintiff.

3. On November 1, 2010, the Clerk received Plaintiff's IFP application. See Docket Entry No. 3.

4. In addition, also on November 1, 2010, the Clerk received a letter from Plaintiff, titled "LETTER/MOTION *CLARIFYING PLAINTIFF'S TYPE OF ACTION*." Docket Entry No. 4, at 1 ("Letter/Motion") (emphasis supplied). In that Letter/Motion, Plaintiff expressly *criticized* the Court for referring to his Complaint as a civil rights pleading, opening his Letter/Motion with the statement:

>The instant letter/motion is presented **with the intention of notifying the** Honorable **Court how the** timely submitted **Complaint for medical negligence is a tort action**, pursuant Title 28 U.S.C §2401(b), **as opposed to the Court's assertion of the above mentioned Complaint being a "1983 case**[,]" see . . . Court's Order, dated Oct. 20, 2010.

---

[1] Since Plaintiff is a federal inmate and challenging the medical care provided to him during his federal incarceration, Plaintiff's claims, technically, could not qualify as § 1983 challenges. Rather, they could be qualified as challenges raised under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). However – since the choice of "causes" allowed to the Clerk is limited by the Administrative Office of the Courts and envisions no "Bivens" option – the Clerk's designation was correct because Bivens is the federal counterpart of § 1983 (which applies only to state action). See Brown v. Philip Morris, Inc., 250 F.3d 789, 801 (3d Cir. 2001) ("A Bivens action . . . is the federal equivalent of the § 1983 cause of action against state actors, [it] will lie where the defendant has violated the plaintiff's rights under color of federal law"). Granted that the Clerk designated this action as a § 1983 action, the Court's October Order referred to it accordingly.

Id.² Plaintiff's Letter/Motion stressed Plaintiff's complete lack of interest in instituting a civil rights action and requested this Court to construe his complaint as raising solely tort claims. See id. Specifically, Plaintiff's Letter/Motion stated, in pertinent part, that

> [B]ecause . . . Plaintiff was compelled to file [this] ***tort action for medical negligence,*** . . . WHEREFORE, based on the submitted Complaint and the instant Letter/Motion, ***Plaintiff asks the Court to correctly treat the mentioned Complaint as a*** timely filed ***tort action***, as expressed in the Complaint, ***as opposed to the Complaint being treated as 28 U.S.C. § 1983 case***.

Id. at 2 (emphasis supplied).

5. On November 15, 2010, this Court issued a Memorandum Opinion and Order ("November Order") dismissing Plaintiff's Complaint. See Docket Entry No. 5. Since the November Order is in the docket, and a copy of the November Order was duly served by the Clerk upon Plaintiff, the content of the November Order is readily available to the reader and requires no recital herein. Therefore, a brief summary of the Court's discussion of facts and law provided in the November Order appears sufficient:

a. In light of Plaintiff's express request to examine his Complaint not as a civil rights pleading but as a pleading filed in a "tort action" and asserting negligence, the Court opened its discussion in the November Order by stating that it would comply with Plaintiff's express wishes to not have his Complaint construed not as a civil rights application. See id. at 2 and n. 2 (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (explaining that a plaintiff is "the master of [his] claim); Kline v. Sec. Guards, Inc., 386 F.3d 246, 252 (3d Cir. 2004) (same); and Pliler v.

---

² The Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 1346(b), operates jointly with 28 U.S.C. § 2401(b).

        Ford, 542 U.S. 225, 231-32 (2004) ("District judges have no obligation to act as counsel or paralegal [even] to pro se litigants")).

b. The Court than detailed the allegations made in the Complaint, which: (i) asserted claims against a prison surgeon (who, allegedly, negligently operated on Plaintiff's eyes); and (ii) demanded "judgment against the defendant for $5,000,000.00 dollars, plus costs." See id. at 2-3 (citations to Plaintiff's Complaint omitted).

c. Following that summary, the Court detailed the content of the multiple exhibits attached to the Complaint; these exhibits showed that Plaintiff was provided with extensive surgical and post-surgical care but, being dissatisfied with the "sandy sensation" in his eyes and sensitivity to light that he experiences during post-surgical period, he deduced that his eye surgeries must have been performed negligently and began administrative actions expressing his displeasures. See id. at 3-6 (extensively quoting the content of Plaintiff's administrative submissions, his demands for administrative remedies, responses by BOP officials and discussions of Plaintiff's medical record and the exact surgical and therapeutic treatments Plaintiff received).

d. With that, the Court dismissed Plaintiff's tort claims explaining that:

    (i) Plaintiff's administrative grievances did not exhaust Plaintiff's challenges stated in the Complaint (since Plaintiff's Complaint stated negligence claims against the *surgeon who operated* on him on the basis of the *surgeries* performed, while Plaintiff's administrative grievances presented

|   | claims against *FCI Fort Dix* officials based on *post-surgical care* in form of post-surgical visits that Plaintiff found insufficient and the eye drops, which effect Plaintiff found not to his liking); |
|---|---|
| (ii) | Plaintiff's administrative challenges sought only injunctive relief in the form of "enforcement of the right to be meticulously examined by a specialized eye-doctor," "prompt attention due to medical negligence by the Medical Staff at FCI Fort Dix" and "a thorough investigation in the present matter," while his Complaint requested no injunctive relief at all and demanded only $5,000,000.00 in monetary damages, hence violating the "sum certain" requirement; |
| c. | In light of these shortcomings, Plaintiff's Complaint was subject to dismissal for the Court's lack of subject matter jurisdiction over his tort action. |

Id. at 6-8.

6. The November Order closed with the following observations:

> The Court's analysis, however, would be incomplete without at least a cursory review of whether grant of leave to amend is warranted.
>
> a. For the purposes of Plaintiff's [tort] claims, Plaintiff's exhibits attached to the body of his complaint clearly establish his failure to exhaust, and this deficiency cannot be cured by re-pleading. Therefore, for the purposes of Plaintiff's [tort] claims, leave to amend appears facially futile.
>
> b. Had the Court examined Plaintiff's challenges under Bivens, Plaintiff's Eighth Amendment claims based on "sandy sensation" and self-servingly asserted surgical negligence would be subject to

dismissal.³ Conversely, Plaintiff's claims that he was denied prescribed "amber-lensed" glasses might have warranted grant of leave to re-plead (since these allegations are sketched so patchily to deserve a chance for clarification) had these allegations been examined for the purposes of a Bivens analysis. Here, however, Plaintiff expressly and in no ambiguous terms directed the Court to exclude from its analysis any Bivens construction of Plaintiff's claims. In light of the foregoing, Plaintiff's Complaint will be dismissed with prejudice.

---

³ The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. See Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). It is doubtful that a "sandy sensation" qualifies as a serious medical need. The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. See Andrews v. Camden County, 95 F. Supp. 2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. See Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110. Therefore, Plaintiff's self-serving bold assertions that his surgeries were performed negligently would be subject to dismissal if examined under Bivens.

|   |   |
|---|---|
|   | Docket Entry No. 5, at 9-10 (footnote in original, citations in the main text omitted). |
| 7. | The Court, therefore, granted Plaintiff <u>in forma pauperis</u> status and dismissed the Complaint with prejudice, directing the Clerk to close the file on this matter. <u>See id.</u> at 10-12. The Court's November Order was docketed on November 15, 2010. <u>See</u> Docket Entry No. 5. |
| 8. | On December 20, 2010, Plaintiff filed his motion ("Motion") for reconsideration, Docket Entry No. 6, <u>i.e.</u>, the submission at bar.[4] |
| 9. | The Motion, while lengthy, could be reduced to an expression of Plaintiff's change of heart to have his Complaint addressed as an FTCA pleading. <u>See</u> Docket Entry No. 6, at 1-6. Taking a peculiar advantage of the statement made by the Court in its October Order (<u>i.e.</u>, when the Court – being at that point unaware of Plaintiff's upcoming intention to insist that this action should *not* be deemed a civil rights action – explained to Plaintiff that administrative termination during the period while the Court awaits for Plaintiff's submission of his IFP/filing fee would not render Plaintiff's challenges untimely in the event his § 1983 complaint was timely handed to Plaintiff's prison officials for mailing to the Court), Plaintiff's Motion stated that the Court erred by complying with Plaintiff's expressed wishes stated in the Letter/Motion (<u>i.e.</u>, with Plaintiff's request to construe his Complaint solely as a tort action pleading) and that the Court should have continued |

---

[4] Plaintiff's Motion was facially untimely and, therefore, warrants dismissal on these grounds. <u>See</u> Local R. 7.1(i) ("A motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge"). However, as the following discussion illustrates, the Court's analysis stated in this Memorandum Opinion and Order would reach the same outcome, <u>i.e.</u>, dismissal of Plaintiff's Motion, had Plaintiff's Motion been timely.

      treating Plaintiff's Complaint as a civil rights pleading, i.e., as the Court intended to treat Plaintiff's Complaint initially: until Plaintiff's Letter/Motion *criticized* the Court for that intention and *expressly directed* the Court *not* to do so. See id. at 3.

10.    The apparent goal of the Motion at hand is Plaintiff's interest to capitalize on the Court's brief observation that, had the Court examined the Complaint as a Bivens pleading, leave to amend might have been warranted with regard to Plaintiff's vaguely mentioned in the Complaint line that, during his post-surgical period, he was provided with clear – rather than amber-lensed – prescription glasses, which he used jointly or in alteration with his sunglasses.[5] See id. at 6. In other words, having his Complaint addressed *as he wishes* and dismissed on merits, Plaintiff Motion effectively requests a second bite at the apple in

---

[5] Plaintiff's Complaint stated that Plaintiff *had* sunglasses to protect his eyes from the bother of sunlight. See Docket Entry No. 1, at 4. In addition, Plaintiff's prescription eyeglasses were changed after surgery to correspond to Plaintiff's post-surgical vision. However, while the Regional Office's response to Plaintiff's appellate grievance stated that, according to Plaintiff's medical file, these new prescription eyeglasses had amber lenses – Plaintiff's Complaint mentioned that his new prescription eyeglasses had amber-colored frame rather then amber lenses. See id. It is on the basis of this *sole sentence* this Court observed that, had Plaintiff not insisted to have his Complaint assessed as a tort action pleading, the Court would have been in the position to *hypothesize* that: (a) an actual medical prescription directing amber-lensed eyeglasses was issued to Plaintiff (or that Plaintiff's joint use of his sunglasses and prescription glasses still left him with such a serious medical need as to qualify the lack of amber lenses into a claim falling within the realm of the Eighth Amendment); and, in addition, that (b) the BOP officials denied Plaintiff's requests to provide amber-lensed glasses, and that they did it not negligently but with deliberate indifference; and, in addition, that (c) Plaintiff actually exhausted his administrative remedies at all three levels of the BOP requesting such amber-lensed glasses, i.e., that he filed a string of administrative grievances *other* than that which Plaintiff described in his Complaint and replicated in his exhibits; then (d) the Court might have found it warranted to allow Plaintiff an opportunity to amend his pleading – had it been filed as a Bivens pleading – to state the facts in support of the Court's hypotheses in "(a)," "(b)" and "(c)" elements.

         the instant action, instead of Plaintiff's filing a true <u>Bivens</u> action on the basis of the alleged lack of amber-lensed glasses.[6] <u>See</u> <u>generally</u>, Docket Entry No. 6.

11.    Three weeks after filing the Motion at bar, Plaintiff filed his notice of appeal as to this Court's November Order. <u>See</u> Docket Entries Nos. 7-8. The Court of Appeals stayed Plaintiff's appellate action in light of Plaintiff's filing of the Motion at hand. <u>See</u> Docket Entry No. 10.

12.    A motion for reconsideration is a device of limited utility. There are only four grounds upon which a motion for reconsideration might be granted: (a) to correct manifest errors of law or fact upon which the judgment was based; (b) to present newly-discovered or previously unavailable evidence; (c) to prevent manifest injustice; and (d) to accord the decision to an intervening change in prevailing law. <u>See</u> 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2810.1 (2d ed. 1995); <u>see also</u> <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985), <u>cert.</u> <u>denied</u>, 476 U.S. 1171 (1986) (purpose of motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence). "To support reargument, a moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision." <u>Assisted Living Associates of Moorestown, L.L.C., v. Moorestown Tp.</u>, 996 F. Supp. 409, 442 (D.N.J. 1998). In contrast, mere disagreement with the district court's decision is an inappropriate ground

---

[6] To that effect, the Court presumes Plaintiff's request for such second bite at the apple was either a fiscal measure (meant to spare him from another assessment of filing fee) or an attempt to avoid another "strike" in the event his <u>Bivens</u> action based on the alleged lack of amber-lensed glasses would be dismissed on merits, or both.

  for a motion for reconsideration: such disagreement should be raised through the appellate process. See id. (citing Bermingham v. Sony Corp. of America, Inc., 820 F. Supp. 834, 859 n.8 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994); G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990)); see also Drysdale v. Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001) (a motion for reconsideration may not be used as a means to reargue unsuccessful theories). Consequently, "[t]he Court will only entertain such a motion where the overlooked matters, if considered by the Court, might reasonably have resulted in a different conclusion." Assisted Living, 996 F. Supp. at 442; see also Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995) ( "[M]otions for reconsideration should be granted sparingly"); Edward H. Bohlin, Co. v. Banning Co., Inc., 6 F.3d 350, 355 (5th Cir. 1993) (a district court "has considerable discretion in deciding whether to reopen a case under Rule 59(e)").

13. Here, Plaintiff's Motion contains assertions that the Court – rather than Plaintiff himself – characterized the Complaint as a pleading filed under the FTCA. See Docket Entry No. 6. Audaciously enough, Plaintiff' Motion now alleges that Plaintiff always wished to have his Complaint assessed as a civil rights pleading filed under the federal counterpart of § 1983, and that Plaintiff's Letter/Motion never really intended to express Plaintiff's desire to have his Complaint screened as a pleading asserting tortious conduct by BOP officials. However, Plaintiff's Letter/Motion stated, in no ambiguous terms, that "***Plaintiff asks the Court to correctly treat the mentioned Complaint as a*** timely filed ***tort action***, as expressed in the Complaint, ***as opposed to the Complaint being treated as***

*28 U.S.C. § 1983 case*." Docket Entry No. 4, at 2. In other words, Plaintiff's instant Motion is nothing but fraud on the Court.

14. As the Court's November Order observed, litigants, incarcerated and not, frequently plead themselves out of court. Such "pleading-oneself-out-of-court" could be done by means of stating facts that render the litigants' pleadings facially meritless or by asserting incorrect jurisdictional basis, or by doing both, or by committing other pleading errors. Some errors, e.g., insufficient statement of facts, could be corrected by repleading; however, assertion of a jurisdictional basis that transforms the pleading into a claim meriting no relief cannot be cured by "repleading" jurisdiction until the litigant "gets it right," in the sense that his/her pleading would not warrant dismissal on jurisdictional basis. For instance, incarcerated individuals habitually assert: (a) civil rights challenges in habeas petitions; or (b) habeas challenges in civil complaint. If the litigant's intentions as to the jurisdictional basis he/she wish to select (or the jurisdictional basis he/she wish to avoid) are obvious from the face of the submissions made by the litigants, the courts are not in the position to second guess the litigants' choices: they rule on the pleadings as submitted. Indeed, it would be a violation of the three-strike requirement posed by the PLRA and a violation of the filing fee requirement for the courts to ignore the litigants' stated jurisdictional bases in order to allow the litigants second, third and so on bites at the apple until the litigants eventually "get it right." Cf. Dickerson v. Diguglielmo, 306 Fed. App'x 707(3d Cir. 2009) (declining to entertain an inmate's civil rights challenges creatively repackaged by him into a habeas petition); Hartman v. Verga, 1985 U.S. App.

    LEXIS 31499 (3d Cir. Oct. 16, 1985) (declining to entertain an inmate's habeas challenges creatively repackaged by him into a civil rights complaint).

15. Since Plaintiff's Motion does not assert any error of law by the Court but, instead, simply reverses Plaintiff's expressed jurisdictional choice after learning that his challenges, as pled, had to be dismissed, Plaintiff's argument does not warrant reconsideration of the Court's determination reached in the November Opinion.

16. Moreover, even if Plaintiff's Motion did not seek to adaciously distort Plaintiff's jurisdictional statement made in his Letter/Motion, Plaintiff's Motion would not warrant <u>vacatur</u> of the Court's November Order.  As explained <u>supra</u> and detailed in the November Order, Plaintiff's challenges were based on the alleged negligent surgical treatment, and just one sentence asserted that the post-surgical prescription eyeglasses Plaintiff received did not have amber lenses, as the Regional Office of the BOP concluded upon examination of Plaintiff's medical file.

  a. As the November Order detailed, Plaintiff's claims of denial of medical care in connection with his surgeries and post-surgical treatment – even if assessed as Eighth Amendment <u>Bivens</u> claims – were subject to dismissal since the record provided in the Complaint and exhibits attached thereto established both systemic and extensive surgical and post-surgical treatment to Plaintiff's eyes.  In other words, with regard to those claims, Plaintiff expressly pled himself out of court, since he showed that the prison officials were in no way deliberately indifferent to his medical needs, even if Plaintiff believes that the prison officials were negligent.

    b.    That leaves the Court with the sole sentence in Plaintiff's Complaint about the alleged lack of amber lenses in Plaintiff's post-surgical prescription eye glasses. If the Court were to assess that sentence under Bivens in light of the statements Plaintiff made in his Motion for reconsideration, that Plaintiff's claim would too be subject to dismissal.

        (i)    First, as the Court already noted in footnote 5 of this Memorandum Opinion and Order, supra, Plaintiff's challenges that he was suffering a serious medical need due to having a set of sunglasses and clear-lensed prescription eyeglasses (instead of amber-lensed prescription eye glasses) had to be administratively exhausted at all three levels of the BOP. "[T]he . . . exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002) (citation omitted). Although failure to exhaust is an affirmative defense which must be pled by the defendant, a district court has inherent power to dismiss a complaint which facially violates this bar to suit. See Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002); Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000). Here, Plaintiff's Complaint and exhibits attached thereto indicate, in no ambiguous terms, that Plaintiff's administrative grievances at no point asserted denial of medical care in the form of denial of amber-lensed prescription glasses; as noted supra, Plaintiff's administrative grievances expressed Plaintiff's

        displeasure with post-surgical doctor visits and insufficiency of therapy in the form of eye drops, and these grievances sought only such remedies as "enforcement of the right to be meticulously examined by a specialized eye-doctor," "prompt attention due to medical negligence by the Medical Staff at FCI Fort Dix" and "a thorough investigation in the present matter." Therefore, Plaintiff's claim based on lack of amber-lensed prescription glasses would be subject to dismissal as unexhausted even if it were asserted as a <u>Bivens</u> claim. And while Plaintiff, in his Motion for reconsideration, could allege the facts showing that he exhausted his administrative remedies in a string of administrative grievances other the one that described in his Complaint and exhibits attached thereto, the Motion – while lengthy – is silent as to any such exhaustion. Which, in turn, indicates that – even if addressed as a <u>Bivens</u> challenge – Plaintiff's claim based on lack of amber-lensed prescription glasses should be dismissed.

(ii)    The Court, however, will go even further in its analysis by hypothesizing that Plaintiff might have administratively exhausted his claim based on lack of amber-lensed prescription glasses but, somehow, forgot to include that fact in his Complaint, the exhibits attached thereto, his Letter/Motion and even in his Motion seeking reconsideration of the Court's November Order. But even that generous presumption cannot salvage Plaintiff's claim.

    (iii)    As the Court's November Order already explained to Plaintiff, the "[d]eliberate indifference" standard applicable to the Eighth Amendment claims is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  See Docket Entry No. 5, n. 9 (citing Farmer, 511 U.S. at 837-38).[7]  Therefore, for the purposes of an Eighth Amendment Bivens action, it is facially insufficient for the litigant has to assert that the defendants treated him negligently; rather, the litigant states a viable claim only if he asserts the facts showing deliberate indifference.

    (iv)    At the time of the Court's screening of Plaintiff's Complaint, the Court – having only one sentence about alleged lack of amber lenses in Plaintiff's prescription eyeglasses to build on, could not rule out the possibility that – had Plaintiff filed a Bivens pleading ab initio and had he been allowed to amend such pleading – he might have stated facts showing deliberate indifference.

    (v)    The gist of Plaintiff's claim based on lack of amber-lensed prescription glasses had, however, qualitatively changed as a result of Plaintiff's filing of his instant Motion.  Here, as noted supra, Plaintiff seeks to reverse his statement (that his Complaint is an FTCA pleading rather that  a civil

---

[7] That footnote is replicated, in full, as footnote 3 in this Memorandum Opinion and Order.

          complaint) with the express goal to obtain from this Court leave to amend his claim based on the alleged lack of amber-lenses prescription glasses.

(vi)    And yet, Plaintiff's instant Motion states, with absolute clarity, that Plaintiff seeks to re-qualify his Complaint into a <u>Bivens</u> pleading in order to repeat his *negligence* claim based on the alleged lack of amber-lenses prescription glasses. Specifically, seeking to find a way to erase the statements he made in his Letter/Motion, Plaintiff, in his instant Motion states:

> Plaintiff, in his Letter/Motion details how "pursuant to Title 28 U.S.C. §1346(b)(1), District Courts 'shall have exclusive jurisdiction of civil actions on claims against the United States' for personal injury caused by the *negligent* act[s] of government employees."

Docket Entry No. 6, at 2 (original emphasis removed, alternative emphasis supplied);[8] <u>see</u> <u>also</u> <u>id.</u> at 1 (verifying, once again, that Plaintiff's Complaint was "for *Negligence* in Administrative Medical Assistance").

(vii)    Since Plaintiff's instant Motion *verifies* that *all* Plaintiff's claims stated in his Complaint were asserting negligent treatment, Plaintiff's claim based

---

[8] The reference to § 1346(b)(1) in Plaintiff's instant Motion for reconsideration is, seemingly, made in hope to assert that: (a) the reference to §1346(b)(1) in Plaintiff's Letter/Motion made it, somehow, incompatible with Plaintiff's insistence that his Complaint was an FTCA pleading; and that (b) the Court should have deduced from that incompatibility that Plaintiff did not really mean to insist on construction of his Complaint as a tort action pleading and that, somewhere deep down inside, he still wanted to file a <u>Bivens</u> complaint. However, there is *no incompatibility* between the FTCA challenges and §1346(b)(1) or between the FTCA and any other statute asserted in the Complaint and Letter/Motion. <u>See</u>, e.g., <u>Cuevas v. United States</u>, 2011 U.S. App. LEXIS 7100 (3d Cir. Apr. 6, 2011); <u>Varma v. Fed. Bureau of Prisons</u>, 2011 U.S. App. LEXIS 6339 (3d Cir. Mar. 28, 2011).

        on alleged lack of amber-lensed prescription eye glasses would be subject to dismissal on this ground, that is, even if the Court were to overlook the facts that Plaintiff's claim based on lack of amber-lenses prescription eye glasses was administratively unexhausted, that his instant Motion was filed out of time, and that his Letter/Motion expressly directed the Court not to treat the Complaint as a civil rights pleading.

17.    Therefore, no <u>vacatur</u> of the Court's November Order could be warranted, since Plaintiff's instant Motion does not assert any errors of law or fact by this Court, does not present any newly-discovered or previously unavailable evidence, does did not bring to the Court's attention any intervening change in prevailing law, and it would be manifest injustice to vacate the November Order on the basis of Plaintiff's brazen trickery and abuse of legal process availed to him.[9]

18.    Therefore, Plaintiff's Motion will be granted in form and denied in substance.[10]

---

[9] Indeed, Plaintiff's instant Motion came dangerously close to inviting sanctions against Plaintiff. The Court, therefore, takes this opportunity to strongly urge Plaintiff not to submit frivolous applications in the future. "The courts in this nation stand ready to address challenges brought by litigants in good faith. Which, in turn, means that the judiciary — including the Judges in this District — expect litigants to treat their litigation with utmost seriousness, without abusing legal process and without unduly testing of the resolve or common sense of the judiciary." <u>In re Telfair</u>, 745 F. Supp. 2d 536, 2010 U.S. Dist. LEXIS 110681, at *130 (D.N.J. Oct. 15, 2010).

[10] The United States Court of Appeals for the Third Circuit guided that a litigant's motion for reconsideration should be deemed "granted" when the court (the decision of which the litigant is seeking a reconsideration of) addresses the merits — rather than the mere procedural propriety or lack thereof - of that motion. <u>See</u> <u>Pena-Ruiz v. Solorzano</u>, 281 Fed. App'x 110, 2008 U.S. App. LEXIS 12436, at *2-3, n.1 (3d Cir. 2008). However, the very fact of the court's review does not prevent the court performing such reconsideration analysis (of the original application, as supplanted by the points raised in the motion for reconsideration) from reaching a disposition identical — either in its rationale or in its outcome, or in both regards —

IT IS, therefore, on this  __31st__  day of  __May__ , 2011,

ORDERED that the Clerk shall reopen this matter, for the purposes of this Court's examination of Plaintiff's motion for reconsideration docketed as Entry No. 6, by making a new and separate entry on the docket reading "CIVIL CASE REOPENED"; and it is further

ORDERED that Plaintiff's motion, Docket Entry No. 6, is granted in form and denied in substance; and it is further

ORDERED that Plaintiff's complaint, Docket Entry No. 1, shall remain dismissed, and such dismissal shall count as a "strike" for the purposes of the three-strikes rule; and it is further

ORDERED that this Court withdraws its jurisdiction over this matter; and it is further

ORDERED that the Clerk shall forward a copy of this Order to the United States Court of Appeals for the Third Circuit, accompanying such forwarding with a notation reflecting Court of Appeals' index number, i.e., 11-1117; and it is finally

ORDERED that the Clerk shall serve this Memorandum Opinion and Order upon Plaintiff by regular U.S. mail and close the file on this action by making a new and separate entry on the docket reading "CIVIL CASE CLOSED."

s/Robert B. Kugler
**Robert B. Kugler**
**United States District Judge**

---

to the court's decision previously reached upon examination of the original application.  See id.